Dear Mr. Townsend:
This office is in receipt of your request for an opinion of the Attorney General in regard to actions of the Gravity Drainage District No. 5 as a result of having had two members on the Board who were illegally appointed. Your questions are as follows:
 1. Since it was determined two members were illegally appointed and their actions created a majority vote, are these actions binding or should they be rescinded, especially if pay raises were involved;
 2. Should monies paid to illegally appointed drainage board members be returned to Gravity Drainage District 5; and, if so, what procedure should be followed for the collection;
 3. Who is responsible for the time lost by the Drainage District 5 employees when they were abruptly laid off by an illegally appointed board member; and can these employees be legally paid for their lost wages from Gravity Drainage District 5 funds;
 4. Can an appointed board member (a) vote to hire himself as a supervisor over the drainage crew and (b) vote to set his own salary; and if not, what procedure should be followed to seek full reimbursement of monies paid to this individual; and
 5. Should the police jury decide to legally abolish Gravity Drainage District 5, which body — Gravity Drainage District 5 Board or the Police Jury — would be responsible for the daily operations of the district until the legal transfer of all assets.
Although you state that it was determined two members of the Drainage District 5 were illegally appointed, we are not apprised of the facts in support of this conclusion or who made the decision, but would assume there was no fraud in the appointments. We will treat the appointees as de facto officers.
The courts have recognized a person in possession of and actually performing the duties of an administrative officer under color or right of title as an officer de facto. He has the reputation of being the officer he assumes to be and yet is not a valid officer in point of law.
In Feinblum v. La. State Board of Optometry Examiners, 92 So.2d 577 (La.App. 1957), there was an appointment by the governor from an inappropriate list but the court found the appointment was to a de jure office and was, therefore, a de facto officer. The court stated his acts have legal effect until he is ousted.
Similarly in Fakier v. Picou, 158 So.2d 285 (La.App. 1963), the court stated even if the Board was not constituted in strict compliance with the statute or ordinance, it nevertheless is a de facto board. The court observed this concept was introduced into law as a matter of policy and necessity to protect the interest of the public and individuals where those interests were involved in the official acts of persons exercising the duties of an officer without being a lawful officer. It was concluded the acts of an officer de facto are as valid and effective where they concern the public or rights of third persons until his title to the office is adjudged insufficient.
Based upon the jurisprudence we would answer your first three questions under the theory that these appointees were de facto officers and their actions were binding until they were declared illegal appointees. Consequently, the actions adopted during their service would be valid.
As de facto officers these appointees were paid as valid appointees would have been, and while the appointments have been determined to be illegal, the pay can be justified if no fraud was involved on a quantum merit basis for services rendered.
Since the actions of the de facto officers must be treated as valid, we must conclude the employees that were laid off cannot be paid for work they did not do during the time of the lay off assuming these are not civil service employees. Of course, a legally constituted board may rehire these employees.
You ask if a board member can hire himself as a supervisor over the drainage crew, vote his own salary, and, if not, what procedure should be followed to seek full reimbursement of monies paid to this individual. To your request you attach a newspaper article on the subject of the drainage district problems which has the following statement:
 An Attorney General's opinion states that a drainage district board "cannot appoint one, of its members as superintendent of the drainage district at a monthly salary".
This is a quotation from an opinion rendered on September 11, 1946 which was prior to the present dual officeholding law. However, we would agree with the conclusion under the provisions of R.S. 42:64 entitled, Incompatible Offices. That provision prohibits the incumbent of one office from holding a position where one office has the power to appoint or remove the incumbent of the other, is required by law to execute orders and follow directions given by the incumbent of the other office, or one office is charged with approving the budget of the other position.
With regard to your question of what procedure should be followed to seek reimbursement of monies paid this individual, the dual officeholding law in R.S. 42:65 provides the Attorney General, the District Attorney or any citizen of the State may petition at the domicile of the defendant for a declaratory judgment against a person alleged to be holding incompatible offices or employment, and declares "the court may order reimbursement to the appropriate governing body of all pay or other compensation and all allowances * * * which have been received by the official or employee in the position vacated * * *."
In your final question you ask if the police jury should decide to abolish the Gravity Drainage District 5 which body would be responsible for the daily operations of the district until the legal transfer of all assets.
Art. VI, Sec. 15 of the Constitution gives the governing authority of local government power over any agency created by it, including, without limitation, the power to abolish. Brasseaux v. Vermilion Parish Police Jury, 361 So.2d 35, (La.App. 1978), held that the term "agency" encompasses drainage districts such as Prairie Gregg Drainage District, but the court concluded the power to abolish did not permit removal of individual commissioners.
This office has recognized this jurisprudence and stated only the Board of Commissioners and not the police jury may operate, manage and control the assets of the district "so long as it allows the district to exist". However, the police jury has the authority to intercede to protect the public interest should the duly appointed commissioners fail to fulfill their responsibilities. Atty. Gen. Op. No 91-27.
We feel the key words of the opinion are "so long as it allows the district to exist", and must conclude once the gravity drainage district is abolished, the commissioners cannot function and the police jury must assume management or control of the assets.
While we have attempted to answer your questions, you must realize we have reached our conclusions without being fully informed of the facts upon which the determination was made that two members were illegally appointed and by whom this decision was made. Under these circumstances, we hope we have been able to sufficiently answer your questions.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
BY: BARBARA B. RUTLEDGE Assistant Attorney General BBR